**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ST. TAMMANY PARISH** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 11-1472** |
| **OMNI PINNACLE, L.L.C., et al.** | **SECTION: "G"(1)** |

### ORDER AND REASONS

Currently before the Court is a Motion for New Trial[1] filed by St. Tammany Parish (the "Parish"). In the motion, the Parish requests that this Court reconsider its previous determination that the United States has a valid lien on both the amount of settlement funds attributable to David Graves, a contractor, and to any interest that had accrued on any such amount. The Parish wants reconsideration of the decision because it prevents Jeff Bratton, an attorney appointed by the state court to represent certain absentee contractors in the concursus action before this case was removed, from receiving payment for costs and fees from these monies against which the United States has a lien. Although ignored by the Parish in its Motion for New Trial, the Court's order also held that the United States' lien did not extend to interest earned on amounts owed to David Graves's subcontractors or the interest earned on amounts due to other intervening parties. This determination thereby allowed Jeff Bratton to recover his fees and costs from the interest accrued on the subcontractors and intervening parties' portions for the services he was conscripted to provide to the absentees in the state concursus and subsequent federal interpleader proceedings in this matter.[2] After considering the motion, the opposition, the record, and the applicable law, the Court will deny

---

[1] Rec. Doc. 111.

[2] Rec. Doc. 108.

1

the motion.

# I.  Background

On April 8, 2005, Omni Pinnacle, LLC's ("Omni") predecessor in interest, Pinnacle Contracting, Inc., entered into a contract with the Parish to provide debris removal services within the Parish.[3]  On September 22, 2005, David Graves ("Graves") entered into a contract with Omni to perform debris cleanup work related to Hurricane Katrina under Omni's contract with the Parish. In that contract, Graves expressly agreed that he was not "entitled to payment to the extent there is . . . claimed failure of [Graves] to make payments to [his] subcontractors, suppliers or laborers."[4] Graves, in turn, entered into contracts with a number of subcontractors ("Graves's Subcontractors") to perform debris removal services under that contract.[5]

After completion of the project, a number of lawsuits were filed in state and federal courts regarding payments due under the various contracts.  On September 14, 2009, Graves settled his claims against the Parish.  Under that settlement, Graves was to receive funds totaling $1.1 million ("Settlement Funds") in satisfaction of his claims against the Parish and/or Omni.  While the Parish secured the Settlement Funds from FEMA, Graves entered into settlement agreements with many of his subcontractors.  In the settlement agreements, Graves and his subcontractors agreed that the subcontractors would be paid from the Settlement Funds upon Graves's receipt of said funds from

---

[3] Petition, Rec. Doc. 1-1 at p. 6; Graves Answer, Manually Filed into the Court Record, Rec. Doc. 11-2.

[4] Contract of David Graves with Omni, Rec. Doc. 66-5 at ¶ 5.3.

[5] Petition, Rec. Doc. 1-1 at p. 6; Graves Answer, Manually Filed into the Court Record, Rec. Doc. 11-2.

the Parish.[6]

On February 8, 2011, the IRS issued a notice of levy to Omni for any property held by it belonging to Graves. On April 18, 2011, the Parish filed a Petition for Concursus in the 22nd Judicial District Court, St. Tammany Parish.[7] The Parish filed the Petition for Concursus to have the state court determine the entitlement of various potential claimants to the Settlement Funds, including Graves, Graves's Subcontractors, and the United States.

After the Parish filed its Petition for Concursus, Jeff Bratton ("Bratton") was appointed by the 22nd Judicial District Court, St. Tammany Parish, to be the attorney representative within the concursus action for a number of Graves's Subcontractors who were deemed to be "absentees" within the meaning of Louisiana Code of Civil Procedure article 5251.[8] In doing so, Judge Reginald T. Badeaux, III, of the 22nd Judicial District Court, ordered that Bratton be paid from the concursus funds. No further detail about Bratton's compensation was given.[9]

On June 22, 2011, the United States removed this action to the Eastern District of Louisiana where it initially was assigned to Section "C," Judge Helen G. Berrigan.[10] It was later transferred

---

[6] Rec. Doc. 17 at pp. 1-2.

[7] Petition, Rec. Doc. 1-1 at p. 1.

[8] Rec. Doc. 8-1; Rec. Doc. 8-2. Absentee "means a person who is either a nonresident of this state, or a person who is domiciled in but has departed from this state, and who has not appointed an agent for the service of process in this state in the manner directed by law; or a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state; or a person who may be dead, though the fact of his death is not known, and if dead his heirs are unknown." La. C.C. art. 5251.

[9] Rec. Doc. 8-1. This order from Judge Badeaux is typed except that "Jeff Bratton, Esq." is handwritten in a blank space left for "Attorney Representative." Additionally, the language specifying that the Attorney Representative be paid from the concursus funds is also handwritten. The handwritten initials of the judge and the date can be seen next to the handwritten language "who shall be paid from the concusus funds." No party has argued that this order is not genuine.

[10] Rec. Doc. 2.

to Section "B," Judge Ivan L.R. Lemelle because it was determined that the case was related to an action previously heard by Judge Lemelle.[11] Subsequently, this case was transferred to this Section, Section "G," on October 7, 2011.[12]

On January 4, 2012, with leave of court, Smith, Currie and Hancock, LLP and Krebs, Farley & Pelleteri, PLLC (collectively, the "Intervening Parties"), two law firms who had represented Graves in this and other litigation arising from Graves's contract with Omni, filed a complaint in intervention.[13] In the complaint in intervention, the Intervening Parties sought to recover a percentage of the Settlement Funds that they helped Graves procure from Omni and the Parish, pursuant to a contingency fee agreement. Neither the Parish nor the United States objected to the claims of the Intervening Parties.

On January 10, 2012, the United States filed a Motion for Partial Summary Judgment wherein it sought this Court's determination that neither the Parish nor Bratton were entitled to fees and costs from the portion of the Settlement Funds subject to a lien and owed to the United States by Graves.[14] The Parish submitted a response to the United States' motion wherein it stated that it had "no objection to the relief sought by the United States," but requested that any judgment issued in this case include certain conditions that were initially requested in its Petition for Concursus.[15]

---

[11] Rec. Doc. 4.

[12] Rec. Doc. 33.

[13] Rec. Doc. 64.

[14] Rec. Doc. 66.

[15] Rec. Doc. 70 at p. 1. These conditions included only: (1) to deposit the sum of $1,100,000 into the registry of Court; (2) for the judgment awarding the parish reasonable attorneys' fees and costs from the money deposited into the Registry of the Court; (3) that the Parish be dismissed from all claims that may arise from Graves, Graves's Subcontractors, and the IRS; (4) that the deposit of the funds eliminates any obligation Omni has to Graves and Graves's Subcontractors; (5) that all defendants be cited to appear and assert their claims against all other parties in the concursus

Although these conditions included a request that the Court award the Parish reasonable attorney's fees out of the Settlement Funds, it did not specify out of whose portion of the funds the fees should be taken or when payment to the Parish should take place.[16] Instead, the Parish only insisted that "no money be paid to Graves or the IRS unless all claims of the Graves Lower Tier Subcontractors are resolved as such is a condition to Graves being entitled to any of the Settlement Funds."[17] Neither the Parish nor Bratton ever requested the costs and fees be taken from a particular source, such as the settlement funds due to Graves's Subcontractors or Intervening Parties.[18] Bratton did not file an opposition to the United States' motion, nor did he supplement any of the conditions stated by the Parish to ensure that he would be compensated prior to the disbursement of the Subcontractors' money; however, in response to the issue of Bratton's compensation and the Court's order during a joint pretrial conference,[19] Bratton briefed the issue of his fees in the proposed pretrial order, only indicating that his fees should be paid "from the corpus of the funds placed on deposit with the Court by the Parish of St. Tammany," but never indicating out of which particular party's portion.[20]

---

proceeding; (6) that the concursus proceeding be set for trial on a summary basis; (7) that no money be paid to Graves or the IRS unless all the claims of Graves's Subcontractors are resolved; and (8) for all other relief that is equitable and just. Rec. Doc. 70-1 at pp. 9-10. In this Court's order granting the motion for disbursement of funds, it ordered "that the remaining balance of the Concursus Fund, following payment to all subcontractors, intervenors, and the United States of America s ordered above, shall be payable to the united States of America and counsel for the absent subcontractors, Jeff Bratton, in amounts, if any, to be determined by this Court. *See* Rec. Doc. 90 at p. 7.

[16] Rec. Doc. 70-1 at p. 9.

[17] *Id.* at p. 10

[18] *Id.*

[19] Rec. Doc. 79.

[20] Rec. Doc. 80.

On February 20, 2012, all parties, including Bratton and the Parish, submitted a proposed order resolving nearly all the claims to the settlement funds, except for Bratton's costs and fees.[21] On April 18, 2012, after the parties agreed as to how the Settlement Funds would be divided among Graves's Subcontractors, this Court granted a Motion to Transfer Money Held in State Court, wherein the Court ordered that the Clerk of Court for the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana tender to the Financial Unit for the Clerk of Court, Eastern District of Louisiana, the amount of $1,100,000 deposited in the matter of *Parish of St. Tammany v. Omni Pinnacle, L.L.C. and Shaw Environmental, Inc., et al.*, 2007-10755, Div. "I", plus all interest accrued on said funds since the date of deposit.[22] The Clerk then transferred these funds to the Eastern District of Louisiana. As this Court previously noted in its prior order, "Bratton participated and consented to the settlement agreement regarding the Intervening Parties and Graves's Subcontractors, including those who he was appointed to represent, and unlike the Intervening Defendants, Bratton failed to negotiate or account for payment of his fees or costs from the Settlement Funds."[23]

On May 3, 2012, this Court issued an order directing the Clerk's office for the Eastern District of Louisiana to disburse money from the concursus fund to Graves's Subcontractors.[24] Before the Financial Clerk for the Eastern District of Louisiana could distribute the funds, an individual from the 22nd Judicial District Court for the Parish of St. Tammany contacted the

---

[21] Rec. Doc. 84.

[22] Rec. Doc. 87.

[23] Rec. Doc. 108 at p. 13; *see also* Rec. Doc. 84 (settlement agreement by all parties).

[24] Rec. Doc. 90.

Financial Clerk of the Eastern District of Louisiana to inform her that the Parish's Clerk of Court's office had failed to withhold court costs before transferring the funds to the Eastern District of Louisiana. The Clerk then contacted this Court with the same message. On May 23, 2012, this Court held a status conference with the parties and Julian Rodrigue, on behalf of the St. Tammny Parish Clerk of Court.[25] Hearing no objection from the parties, the Court ordered the state court Clerk to submit a briefing within five days of the status conference providing the Court with a legal basis for the Parish's claims to a portion of the funds; to address whether it could waive the fee it alleged it was owed; and stating its position on whether it did, in fact, waive such fees.[26] The Court then allowed the parties three (3) days to respond, individually or collectively, to the Clerk's request.[27] After consideration, this Court held that the Parish had waived any entitlement to the funds.[28]

Subsequently, pursuant to this Court's order,[29] various parties filed briefs addressing whether the United States would be entitled to interest earned on monies owed to Graves's Subcontractors and the Intervening Parties.[30] None of the parties, including the United States, asserted that the United States was entitled to the interest on the Subcontractors' monies.[31] On July 3, 2012, this Court granted the United States' Motion for Partial Summary Judgment, affirming that neither the Parish nor Bratton was entitled to have fees and costs paid from the portion of the Settlement Funds due to the United States; however, the Court granted Bratton the interest earned on the principal

---

[25] Rec. Doc. 93.

[26] *Id.*

[27] *Id.*

[28] Rec. Doc. 107.

[29] Rec. Doc. 104.

[30] *See* Rec. Doc. 105; Rec. Doc. 106.

[31] *See* Rec. Doc. 105; Rec. Doc. 106.

funds that had recently been disbursed to Graves's Subcontractors, which interest was still in the

Court's possession, and not subject to the United States' lien.[32]

On July 31, 2012, the Parish filed the pending Motion for New Trial[33] seeking

reconsideration of this Court's ruling that Bratton could not recover additional money from the

remaining undisbursed funds that were set to be disbursed to the United States in order to satisfy its

lien.[34] The Parish has never-- neither in its original briefing on the issue nor in its current Motion

for a New Trial-- cited authority for its position that its or Bratton's fees and costs could be

deducted from the amounts to which the United States' lien attaches. The United States filed its

response in opposition on August 6, 2012, urging this Court not to upset its prior ruling on this

matter.[35]

## II. Parties' Arguments

In the pending motion, the Parish requests that this Court reconsider its prior determination

that Bratton may not recover his fees from the remaining funds that this Court has determined are

subject to the United States' lien, because such a result will leave Bratton under-compensated for

his work in the concursus proceeding.[36] The Parish stresses that without Bratton's work, which was

conscripted by the state court, no party, including the United States, would have received the funds

owed them.[37] The Parish posits a theory, without citing any case law or other legal support, that

---

[32] Rec. Doc. 108.

[33] Rec. Doc. 111.

[34] *Id.*

[35] Rec. Doc. 113.

[36] Rec. Doc. 111 at p. 1.

[37] *Id.*

8

Graves's interest in the Settlement Funds did not extend to the fees owed to Bratton, and therefore, the United States' tax lien never attached to those funds.[38]

The Parish also argues that the United States previously admitted that it did not have a right to the interest which accrued on amounts owed to Graves's Subcontractors and the Intervenors.[39] Therefore, the Parish maintains that "[a]s the United States stands in Graves' shoes, and its tax lien only attaches to property which Graves himself acquires, the United States does not have a right to those monies properly payable to Mr. Bratton."[40]

In opposition, the United States emphasizes that when it filed its previous motion for partial summary judgment, which asserted that neither the Parish nor Bratton was entitled to costs and fees from the funds subject to the United States' tax lien, Bratton submitted no response in opposition to assert a claim to these funds– yet these are exactly the funds from which Bratton now seeks compensation.[41] Regarding the Parish's theory that Graves does not have an interest in the funds owed to Bratton, the United States points to the contract between Graves and Omni; the agreement entitled Graves to the entirety of the Settlement Funds, except the funds owed to Graves's Subcontrators.[42] Moreover, The United States maintains that these very arguments were made "verbatim" in a June 29 memorandum,[43] and rejected by the Court when it granted the United States' motion for partial summary judgment.[44] The United States further argues that the only portion of the

---

[38] Rec. Doc. 111-1 at p. 2.

[39] *Id.* (citing Rec. Doc. 105).

[40] *Id.*

[41] Rec. Doc. 113 at p. 3

[42] *Id.* at p. 7.

[43] Rec. Doc. 106.

[44] Rec. Doc. 113 at p. 6.

9

funds to which Graves was not entitled in this proceeding were the funds owed to his

subcontractors.[45]

In addition, the United States requests that the Court deny the pending motion because its

previous ruling was correct. The United States contends that the Parish's arguments in support of

the pending motion only seek to give effect to Louisiana priority law under Louisiana Code of Civil

Procedure article 5096, which governs the payment of attorney representatives for absentees like

Bratton, but would not "diminish Graves' underlying property interest in the funds to be

distributed." The United States maintains that Louisiana priority law is preempted here because of

the United States' lien, and that Bratton does not have priority over the United States' lien.[46] Finally,

the United States addresses the Parish's argument that as Graves was not entitled to any of the

interest accrued on Graves's Subcontractors and the Intervenors' funds, the United States is likewise

not entitled to money "properly payable to Mr. Barron." The United States points out that the

Intervenors were law firms who helped secure Graves's settlement with the Parish, and federal law

recognizes the priority of that lien over that of the United States.[47] Specifically, The United States

cites 26 U.S.C. § 6323(b)(8) which states:

> Attorneys' liens.--With respect to a judgment or other amount in settlement of a
> claim or of a cause of action, as against an attorney who, under local law, holds a lien
> upon or a contract enforceable against such judgment or amount, to the extent of his
> reasonable compensation for obtaining such judgment or procuring such settlement,
> except that this paragraph shall not apply to any judgment or amount in settlement
> of a claim or of a cause of action against the United States to the extent that the
> United States offsets such judgment or amount against any liability of the taxpayer
> to the United States.

---

[45] *Id.* at p. 7.

[46] *Id.* at pp. 7-8 n.3 (citing *Spinks v. Jones*, 499 F.2d 339, 340 (5th Cir. 1974) (per curiam); U.S. Const. art. VI.).

[47] *Id.* at p. 8 n. 4 (citing 26 U.S.C. §§ 6321, 6323(b)(8)).

10

Intervenors "were responsible for securing graves' settlement with the Parish" while Bratton only

represented certain parties in a concursus or interpleader action.[48]

### III. Law and Analysis

#### A. Standard on a Motion to Reconsider[49]

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for

reconsideration' *in haec verba*,"[50] it has consistently recognized that such a motion may challenge

a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[51] Such a motion

"calls into question the correctness of a judgment,"[52] and courts have considerable discretion in

deciding whether to grant such a motion.[53] In exercising this discretion, courts must carefully

balance the interests of justice with the need for finality.[54] Courts in the Eastern District of

Louisiana have generally considered four factors in deciding motions for reconsideration, which are

typically decided under the Rule 59(e) standard:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the
>     judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;

---

[48] *Id.*

[49] Although the Parish's motion requests a new trial, the United States in its response points out that this matter was not decided in a trial, nor was there a verdict. Rec. Doc. 113 at p. 4 n.2. As such, the Court will construe the Parish's motion as a motion to reconsider. The Parish later explicitly requests that this Court "reconsider its determination." Rec. Doc. 111 at p. 1.

[50] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[51] *Id.* (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3-4 (E.D. La. Apr. 5, 2010) (Vance, C.J.) (Rule 54).

[52] *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).

[53] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[54] *Id.* at 355-56.

(3) the motion is necessary in order to prevent manifest injustice; or

(4) the motion is justified by an intervening change in controlling law.[55]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments. . . .'"[56] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[57] "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[58]

Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[59] and the motion must "clearly establish" that reconsideration is warranted.[60] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[61] As the United States points out, the Parish has failed to identify any intervening change in controlling law or new evidence.[62] Although the consequence of applying precedent may be to the detriment of Bratton, who is unable to recover the full amount of his fees and costs, the fact that Bratton loses out, without any authority to support an

---

[55] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[56] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[57] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[58] *Helena Labs.*, 483 F. Supp. 2d at 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[59] *Templet*, 367 F.3d at 478-79 (citation omitted).

[60] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[61] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[62] Rec. Doc. 113 at p. 5.

alternative conclusion, is insufficient to allow the Court to grant him recourse in this matter; this Court is bound to abide by controlling precedent that rejects Bratton and the Parish's arguments.

### B. Analysis

The Parish fails to provide any legal support for its position that Graves's settlement does not encompass the funds owed to Bratton and upon which the United States' has a lien; the Parish cites no statutes or case law and instead merely reiterates the severity of the hardship imposed on Bratton. Although this Court is sympathetic to Bratton's situation, it is nonetheless constrained to act within the law and precedent of this circuit.

In *Spinks v. Jones*,[63] the Fifth Circuit clearly stated that "the portion of an interpleaded[64] fund that is subject to a Government tax lien ***cannot*** be reduced by an award of attorney's fees to the stakeholder for bringing the interpleader action." In a subsequent unpublished opinion by the Fifth Circuit, the court reaffirmed *Spinks* and the principle that attorney's fees may not come from an amount upon which there is a federal lien.[65] In that case, *Frappier v. Texas Commerce Bank, N.A.*,[66] the Fifth Circuit refused to allow attorney's fees to be paid out of a fund burdened by a federal tax lien, stating, "Notwithstanding [the attorney's] ***unfairness claims***, *Spinks* establishes a simple, controlling rule that respects the United States' superior lien under I.R.C. §§ 6321-6323." Therefore, despite the likelihood that this Court's prior ruling may prove unfair to Bratton, that alone is insufficient to allow this Court to reconsider its prior determination.

---

[63] 499 F.2d 339, 340 (5th Cir. 1974) (per curiam) (emphasis added).

[64] "Interpleader" is the common law analogue to "concursus."

[65] *Frappier v. Texas Commerce Bank, N.A.*, 71 F.3d 878 (5th Cir. 1995).

[66] *Id.* (emphasis added).

The Parish's only remaining argument is that the funds owed to Bratton never belonged to Graves and that, therefore, they are not subject to the federal lien.[67] However, the Parish has failed to cite any authority, nor has this Court been able to find any such authority, to support the Parish's contention that the money owed to Bratton is not subject to the United States' lien. The United States has responded and demonstrated that Graves's interest attaches to the remaining funds. Bratton has not demonstrated the existence of an attorney's lien or contract, which under federal law grants an attorney who helped obtain a settlement priority over a United States' lien. In the absence of an attorney's lien or contract, the United States holds a superior lien that trumps any entitlement Bratton may have. In contrast, the Intervening Parties, law firms that helped Graves obtain a settlement with the Parish prior to the concursus action, had a contingency fee agreement with Graves which entitled them to receive their fees in priority to the United States. Specifically, 26 U.S.C. § 6323(b)(8) recognizes the Intervening Parties' priority over the United States' lien. Moreover, Bratton is seeking an award of attorney's fees from a fund encumbered by a United States' lien for bringing an interpleader action – not for obtaining a settlement – which *Spinks* and *Frappier* expressly prohibit. These two cases establish that an attorney does not enjoy priority over a United States' lien pursuant to 26 U.S.C. § 6323(b)(8) merely for participating in a concursus or interpleader action.  Neither the Parish nor Bratton has provided any substantiated basis for this Court to find that Graves, and by extension the federal government, is not entitled to the entirety of the remaining funds. Instead, the Fifth Circuit in *Spinks* and *Frappier* foreclose this Court from allowing Bratton a portion of the remaining funds because they are subject to a federal lien. No authority provided by the Parish supports its argument that money owed to an attorney is separate and, therefore, not subject to a United States' lien. As such, this Court did not commit a manifest

---

[67] Rec. Doc. 111-1 at p. 2.

error of law and must deny the relief now sought by the Parish.

### III. Conclusion

This Court previously found that Bratton cannot receive compensation from the settlement amount owed to Graves or interest accrued on those amounts because they are subject to a federal lien, but that he could recover from the interest accrued on the portion of the funds owed to Graves's Subcontractors and Intervening Parties.[68] This Court now finds that the Parish has failed to produce any basis in law, nor could this Court find any such basis, to allow the Court to reconsider its previous determination, despite the unfairness of the situation to Bratton. To the contrary, this Court finds that controlling precedent within this circuit prohibits the relief sought by the Parish. Accordingly,

**IT IS HEREBY ORDERED** that the Parish's Motion for New Trial[69] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __10th__ day of December, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[68] *See* Rec. Doc. 108.

[69] Rec. Doc. 111.